IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| DANIEL C. DUNN | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 6:12-cv-00021 |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN[1], Acting | ) | By: Hon. Robert S. Ballou |
| Commissioner of Social Security, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Daniel Clinton Dunn ("Dunn") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. §§ 1381–1383f. Specifically, Dunn alleges that the Commissioner did not afford appropriate weight to the opinion of his treating physician, improperly evaluated his credibility, and that the new evidence presented to the Appeals Council warrants remand.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that substantial evidence supports the Commissioner's decision, and that remand is not warranted based on the additional evidence submitted to the Appeals Council. Accordingly, I **RECOMMEND**

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

**DENYING** Dunn's Motion for Summary Judgment, (Dkt. No. 11), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 13).

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[2] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975). In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).

## STATEMENT OF FACTS

### Social and Vocational History

Dunn was born on March 30, 1957, (Administrative Record, hereinafter "R.", 26, 102), and was "closely approaching advanced age" on his alleged onset date. R. at 26; 20 C.F.R.

---

[2] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

§ 416.933(c). To receive SSI benefits, Dunn must establish that his disability began on or before the date he applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R § 416.501. Dunn has an eighth grade education level. R. 26. He last worked as a carpenter in 1989. R. 119. Dunn reported that during the relevant period, he sat on the couch all day, washed dishes, swept the floor, showered every three days, needed reminders to change his clothes, and needed assistance preparing his meals and medication. R. 139-41.

## Claim History

Dunn protectively filed his application for SSI on February 2, 2010, claiming that his disability began on March 30, 2006. R. 113. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 44, 53. On May 11, 2011, Administrative Law Judge ("ALJ") Marc Mates held a hearing to consider Dunn's disability claim. R. 22. Dunn was represented by counsel at the hearing. R. 10.

On September 7, 2011, the ALJ entered his decision denying Dunn's claims. R. 10–17. The ALJ found that Dunn suffered from the severe impairments of peripheral artery disease ("PAD") status post percutaneous translimunal angioplasty and stent replacement, non-dominant left shoulder difficulty, and history of substance dependence. R. 12. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 12. The ALJ further found that Dunn retained the residual functional capacity ("RFC") to perform light work, with occasional pushing and pulling with his non-dominant left arm, and that he should avoid concentrated exposure to hazards. R. 13. Based on this RFC, Dunn was incapable of returning to his past relevant work, (R. 16), but could perform the requirements of representative occupations at the light exertional level, which exist in significant numbers in the national economy. R. 17.

Dunn submitted a request to review to the Appeals Council, along with medical records from Bedford Memorial Hospital and Lynchburg General Hospital. R.4. The Appeals Council made this evidence part of the record. R. 4. On March 12, 2012, the Appeals Council denied Dunn's request for a review of the ALJ's decision, thereby rendering the decision of the ALJ the final decision of the Commissioner. R. 1. This appeal followed.

## **ANALYSIS**

### **Treating Physician Opinion**

Dunn first alleges that the ALJ erred by giving the opinion of his treating physician, Peter O'Brien, M.D., only partial weight. On November 1, 2010, Dr. O'Brien completed a Cardiac Residual Functioning Capacity Questionnaire, and found that Dunn could perform light work, but would need to lie down one hour in an eight hour workday, and would likely be absent from work twice a month. R. 472. The ALJ gave Dr. O'Brien's assessment partial weight; finding the restrictions regarding lying down and missing work to be unsupported in the record. R. 15.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the

record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 WL 6621693 (E.D. Va. Dec. 29, 2010).

In this case, the ALJ's decision to give Dr. O'Brien's opinion partial weight is supported by substantial evidence. The relevant medical evidence is briefly summarized, as follows:

In January 2010, a magnetic resonance angiogram (MRA) of the arteries in Dunn's lower extremities indicated that vascular disease was present, mostly in the common iliac arteries bilaterally. R. 262. On February 11, 2010, Dunn required an angiography, with placement of a stent in the right common and external iliac arteries. R. 272-74, 297-99, 480-82. On February 19, 2010, Dunn followed up with Brian Schietinger, M.D., and reported left groin discomfort. R. 324. Dunn also reported that his lower extremities and feet were much improved post-surgery, and that he had no discomfort upon walking or exertion R. 324. On February 26, 2010, Dunn again followed up with Dr. O'Brien, and noted that his groin discomfort had improved, and he had no claudication. R. 315, 384. He reported difficulty urinating, and antibiotics were prescribed to treat a fever and high white blood cell count not related to his surgery. R. 316-17, 385-86, 437-38.

On March 10, 2010, Dunn visited the urgent care clinic complaining of burning pain along his right thigh. R. 388. Dunn also noted that his right leg was doing "great." R. 388. He was prescribed Neurontin and Vicodin for pain. R. 391. On April 1, 2010, Dunn noted that his claudication had improved, but he was experiencing neuropathic pain in his left thigh. R. 347. Dunn also noticed exertional chest pain and shortness of breath now that he was walking more. R. 347. Dr. O'Brien determined that Dunn's PAD was stable with no recurrent or lifestyle limiting claudication and no evidence of tissue breakdown. R. 349.

On May 5, 2010, Dr. O'Brien noted that Dunn progress was fair since his last visit. Dunn still complained of some hip pain, and limited range of motion and pain in his left shoulder. R. 356-59. Dr. O'Brien again noted that Dunn's PAD was stable with no recurrent or lifestyle limiting claudication and no evidence of tissue breakdown. R. 359. Dr. O'Brien referred Dunn to Peter Caprise, M.D., for his shoulder pain.

On May 27, 2010, state agency physician Brian Strain, M.D., reviewed the record and found that Dunn could perform light exertional work, but had a limited ability to push and/or pull with his left upper extremity, and should avoid concentrated exposure to hazards. R. 153-54. On August 16, 2010, Joseph Duckwall, M.D., reviewed the record and reached the same conclusion as Dr. Strain. R. 184-85.

On June 11, 2010, Dr. Caprise diagnosed impingement syndrome in Dunn's left shoulder and injected lidocaine. R. 419-420. Dr. Caprise recommended home exercise in lieu of physical therapy due to Dunn's lack of insurance. R. 420.

On October 4, 2010, Dunn returned to Dr. O'Brien complaining of pain in his left leg, fatigue and shortness of breath, and left shoulder pain. R. 465. Dr. O'Brien noted that Dunn's PAD was stable, ordered pulmonary function tests, and referred Dunn to a neurologist. R. 467. On October 28, 2010, Morris E. McCrary, III, M.D., evaluated Dunn and noted that his neurological examination was "fairly normal" with no focal deficits, which suggested radiculitis rather than radiculopathy. R. 497-98.

On November 1, 2010, Dr. O'Brien completed a Cardiac Residual Functional Capacity Questionnaire indicating that Dunn's PAD resulted in a mild to moderate limitation in activity. R. 472-78. Dr. O'Brien found that Dunn could perform low stress jobs, and could perform the exertional demands of light work. Dr. O'Brien also found that Dunn's fatigue would require him

7

to lie down for one hour in an eight hour workday, and miss work about twice a month. R. 472-78.

Based on the evidence set forth above, the ALJ determined that Dunn is capable of performing light work, except that he can no more than occasionally push and/or pull with his left arm, and must avoid concentrated exposure to hazards. R. 13. The ALJ carefully considered the record, Dr. O'Brien's opinion, the opinions of the state agency physicians, and Dunn's recovery from his angioplasty and improvement in his condition. The ALJ accepted the opinions of the state agency physicians, and gave the opinion of Dr. O'Brien partial weight, finding his comments about Dunn's need to lie down each day and expected absences to be unsupported by the record. R. 15.

Having reviewed the record as a whole, I find substantial evidence to support the ALJ's decision to give Dr. O'Brien's opinion partial weight. Dunn's records demonstrate that his physical condition improved following the angioplasty and stent placement in February 2010. Indeed, Dr. O'Brien's treatment notes show that Dunn reported improvement in his lower extremities with no claudication or discomfort upon walking or with exertion. R. 315, 324, 330, 384, 436. Although Dunn complained of neuropathic pain in his left leg post-surgery (R. 347, 351, 388, 392, 440, 444, 487, 491), a neurological examination was "fairly normal" with no focal deficits (R. 497-98). Dunn denied fatigue at several visits, and Dr. O'Brien noted that he was "well developed, well nourished, in no acute distress." R. 352, 357. Dr. O'Brien also specifically stated that Dunn's PAD was stable with no recurrent or lifestyle limiting claudication. R. 349, 359.

Given these records, there is substantial evidence to support the ALJ's conclusion to give Dr. O'Brien's opinion partial weight. The issue on appeal is not whether it is plausible that a

8

different fact finder could have drawn a different conclusion, or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).

## **Credibility**

Dunn also argues that the ALJ erred by failing to assign substantial credibility to his testimony that he suffers from physical limitations and is unable to engage in substantial activity. At the administrative hearing, Dunn testified that he spends the majority of the day on the couch, he can't stand very long, he has memory problems, and he suffers from pain in his back and hips. R. 27-32.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Dunn's subjective allegations of disabling pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Dunn met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Dunn's ability to work. Id. at 594-95.

In this case, the ALJ recognized that Dunn suffers from severe impairments that cause him to experience fatigue and pain. The issue is not whether Dunn has physical limitations, but whether those limitations are so severe as to be disabling. The ALJ found that Dunn's statements regarding his limitations are not entirely credible and are not supported by the

medical records showing his post-angioplasty improvement, the physical findings made on examination, and the reports of the reviewing and treating physicians in the record. The ALJ included a detailed analysis of Dunn's treatment records in his opinion in support of this conclusion.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.) After a review of the record as a whole, I find that substantial evidence supports the ALJ's determination that Dunn's testimony regarding his disabling limitations is only partially credible, and that Dunn is capable of performing the limited range of light work set forth in the ALJ's opinion.

Dunn's treatment records do not reflect a debilitating condition, but rather a condition that was continuously improving after the angioplasty and stent placement. The record reflects that post-surgery, Dunn had no claudication and could walk greater distances. His neuropathic pain was alleviated with medication, and injections and exercise were prescribed for his shoulder pain. His neurologic examination was fairly normal with no focal deficits. Dunn's subjective assessments of his limitations at medical appointments also reflect improvement. He denied fatigue, and stated that his leg was "great," his claudication had improved, and he was walking more. R. 324, 347, 352, 357, 384, 388.

The record also reflects that during the relevant period, Dunn continued to smoke cigarettes and abuse alcohol, against his physicians' recommendations. In December 2009,

Dunn had an episode of alcohol withdraw-induced seizures, after which he was continuously instructed to abstain from alcohol. R. 210-23. However, throughout the record, Dunn reported drinking six to nine beers, six times per week. R. 316, 320, 325, 331, 352, 357, 385, 389, 393, 397, 437, 441, 445, 466, 488, 492. Finally, the ALJ noted that Dunn had not worked for thirteen years prior to filing his application for benefits. R. 14.

Dunn asserts that the medical evidence of record "corroborates" his testimony, and that the ALJ improperly analyzed his pain complaints and credibility. Pl.'s Br. 11. Dunn's appeal essentially asks the court to re-analyze the facts and re-weigh the evidence; disregarding the substantial evidence standard of review that this court must apply to the ALJ's decision. Additionally, credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). Here, the ALJ's credibility determination is supported by substantial evidence, and should not be disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658-59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589).

## Additional Evidence

Dunn argues that the case should be remanded to the ALJ for consideration of additional records submitted to the Appeals Council which show that Dunn required a second angioplasty and stent placement twenty days after the ALJ's decision. On September 24, 2011, Dunn presented to the emergency room complaining of lower leg pain and painful, blue-colored toes.

R. 564. He was diagnosed with PAD and intermittent claudication, and discharged in stable condition. R. 570. On September 27, 2011, Dunn underwent a second angioplasty and stent placement in his right common and iliac arteries. R. 553-61. Post-surgery, Dunn complained of numbness and intermittent pain, but was able to ambulate. Dunn was discharged with instructions to stop smoking, continue on medications, and follow up with Dr. O'Brien in four to six weeks. R. 558.

The Appeals Council considered these additional records and found that they did not provide a "reason to review the Administrative Law Judge's decision." R. 1. When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991.) Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id. The Appeals Council was not required to provide express, specific findings on the record regarding the additional evidence submitted by Dunn. As the Fourth Circuit clarified in Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011), "nothing in the Social Security Act or the regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." In this case, the Appeals Council's consideration of the additional evidence submitted by Dunn and denial of review met its obligations under the agency's regulations.

When the Appeals Council denied Dunn's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings. Wilkins, 953 F.2d at 96. "However, the

Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005)(citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record, including the new evidence, to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If such conflicts are not present, the case can be decided on the existing record without a remand. Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 Fed. Appx. 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001)(unpublished opinion); McConnell v. Colvin, No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D. Va. March 25, 2013)).

Here the additional treatment records are clearly new evidence. The records do not require remand, however, because they are not material, and do not relate to the relevant time period at issue.

Dunn argues that the new medical records reflect upon Dunn's physical condition prior to the ALJ's decision, and show that Dunn's February 2010 angioplasty and stent placement did not

13

result in improvement, and that Dunn's PAD was not stable. Pl. Br. at 13. I disagree. The medical evidence before the ALJ demonstrates that Dunn had significant improvement after his first angioplasty and stent placement. The records show that during the relevant time period, Dunn's PAD was stable, with declining symptoms. The new records reflect deterioration of Dunn's PAD after the ALJ's decision. There is no indication in the new records that they relate to Dunn's physical condition twenty days earlier.

Further, no additional limitations or restrictions were placed on Dunn's functional capacity after the second angioplasty and stent placement in September 2011. The new records show that the second angioplasty and stent placement successfully cleared blockages in Dunn's lower extremities. R. 553-55. At discharge, Dunn was ambulating, could do activity as tolerated, and was advised to start a walking program. R. 555, 558. The new records do not present the type of contradictory evidence that creates a reasonable possibility of changing the outcome of the case. The new evidence demonstrates that Dunn's condition worsened shortly after the ALJ's decision. In situations where a claimant's health worsens after the ALJ's decision, either due to a progressive condition or a stable condition with a sudden decline, the proper recourse is to file a new application. Consequently, I find no reasonable probability that the new evidence would have changed the ALJ's decision in this case.

## Conclusion

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, I find that substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Dunn is totally free from any distress. The objective medical record simply fails to document the

existence of any physical and/or mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Dunn's claim for benefits and in determining that his physical impairments would not prevent him from performing a range of light work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, I conclude that the Commissioner's decision must be affirmed, the defendant's motion for summary judgment **GRANTED**, and Dunn's motion for summary judgment **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 5, 2013

*/s/ Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

.