IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DANIEL C. DUNN,<br>                                     *Plaintiff*,<br><br>               v.<br><br>CAROLYN W. COLVIN[1], COMMISSIONER OF<br>SOCIAL SECURITY,<br>                                     *Defendant*. | CASE NO. 6:12–cv–00021<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross Motions for Summary Judgment (docket nos. 11 and 13), the Report & Recommendation of United States Magistrate Judge Robert S. Ballou (docket no. 17, hereinafter "R&R"), and Plaintiff's Objections to the R&R (docket no. 19). Pursuant to Standing Order 2011 – 17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to the Magistrate Judge for proposed findings of fact and a recommended disposition. The Magistrate Judge filed his R&R, advising this Court to deny Plaintiff's Motion for Summary Judgment, and grant the Commissioner's Motion for Summary Judgment. Plaintiff timely filed his Objections, obligating the Court to undertake a de novo review of those portions of the R&R to which objections were made. *See* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). For the following reasons, I will overrule Plaintiff's Objections and adopt the Magistrate Judge's R&R in full.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

# I. BACKGROUND

On February 2, 2010, Plaintiff Daniel C. Dunn ("Plaintiff") protectively filed an application for Supplemental Security Income ("SSI") payments under the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–1383f. To receive SSI benefits, Plaintiff must show his disability began on or before the date he applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R. § 416.501.

Plaintiff was born on March 30, 1957, and was "closely approaching advanced age" on his alleged onset date. R. 26; 20 C.F.R. § 416.933(c). Plaintiff claims his disability began on March 30, 2006, due to problems with his legs (from peripheral artery disease), lower back, and memory. R. 113. Plaintiff reported that, during the relevant period of his alleged disability, he has spent much of his time sitting on the couch all day, washing dishes, and sweeping the floor. Plaintiff noted showering every three days and needing reminders to change his clothes, along with assistance preparing meals and medication. R. 139–41. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## A. The ALJ's Decision

The state agency denied Plaintiff's application at the initial and reconsideration levels of administrative review (R. 44, 53), and on May 11, 2011, Administrative Law Judge ("ALJ") Marc Mates held a hearing to consider Plaintiff's disability claim. R. 22. Plaintiff was represented by counsel at the hearing. R. 10.

Determining disability, and thus eligibility for Social Security benefits, involves a five-step inquiry. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). In this process, the Commissioner asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the

claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) the claimant is able to perform his past relevant work; and (5) the claimant can perform other specific types of work. *Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The claimant has the burden of production and proof in Steps 1–4. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). At Step 5, however, the burden shifts to the Commissioner "to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[is] age, education, and work experience." *Id.* If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ found Plaintiff suffers from the severe impairments of peripheral artery disease ("PAD") status post percutaneous translimunal angioplasty and stent placement, non-dominant left shoulder difficulty, and history of substance dependence. R. 12. He found these impairments, both individually and in combination, do not meet or medically equal a listed impairment. R. 12.

Plaintiff has an eighth-grade education level (R. 26), and worked as a painter and carpenter until 1989, receiving income for work through 1996. R. 107–09, 119. The ALJ found Plaintiff was incapable of returning to his past relevant work. R. 16. But the ALJ also found Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), with occasional pushing and pulling with his non-dominant left arm. The ALJ noted Plaintiff should avoid concentrated exposure to hazards. R. 13.

Plaintiff requested review from the Appeals Council and submitted medical records from Bedford Memorial Hospital and Lynchburg General Hospital documenting a second angioplasty

3

and stent placement on September 27, 2011, twenty days after the ALJ's issued his decision. R. 4. On March 12, 2012, the Appeals Council made Plaintiff's newly submitted evidence part of the record and denied Plaintiff's request for review. R. 4. The ALJ's decision thus became the Commissioner's final decision under 42 U.S.C. § 405(g) on March 12, 2012. R. 1. Plaintiff filed the instant suit on May 7, 2012, seeking judicial review of the Commissioner's final decision.

## B. The Summary Judgment Motions

In his November 5, 2012 memorandum, Plaintiff contends the ALJ gave insufficient weight to the opinion of his treating physician, Dr. O'Brien. Pl.'s Mem. in Supp. 9–11. The ALJ gave Dr. O'Brien's RFC assessment of Plaintiff partial weight. He held the doctor's findings that Plaintiff would have to lie down one hour in an eight-hour workday and would likely be absent from work twice a month were unsupported by medical evidence in the record. R. 15, 472. Plaintiff also objects that the ALJ improperly evaluated his credibility, failing to credit Plaintiff's testimony that his limitations are so severe as to render him disabled. Plaintiff asserts his testimony about his limitations is supported by medical evidence on the record and was improperly analyzed by the ALJ. Pl.'s Mem. in Supp. 9–15. . Should the Court disagree with Plaintiff on the above arguments, Plaintiff argues in the alternative that the evidence he presented to the Appeals Council is new and material and warrants remand to the Commissioner for reconsideration. *Id.* at 13–15.

In response, Defendant argues the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence. Def.'s Mem. in Supp. 6–7. Defendant also states the ALJ properly considered and weighed the evidence from Dr. O'Brien, Plaintiff's treating physician. Dr. O'Brien's opinion that Plaintiff would have to lie down for one hour of an eight-hour workday and would be absent from work twice a month was unsupported by medical evidence

4

and in fact contradicted by Dr. O'Brien's own prognoses and examinations, according to Defendant. *Id.* at 7–8. Defendant argues the ALJ properly disregarded that portion of Dr. O'Brien's opinion, because it contradicted other ample evidence in the record indicating Plaintiff could perform low-stress, light work. *Id.*

Defendant further argues the ALJ's credibility findings are properly supported by substantial evidence. *Id.* at 8–10. The ALJ relied on multiple factors in disregarding Plaintiff's assertions that the intensity, persistence, and limiting effects of his symptoms precluded him from performing work within the ALJ's RFC. *Id.* at 8–9. These included "inconsistencies between Plaintiff's testimony and the function report he completed previously," the records showing Plaintiff failed to work for thirteen years prior to filing for benefits, medical records documenting improvement, mobility, and a stable condition after angioplasty, Plaintiff's alcohol abuse, the conservativeness of Plaintiff's treatment by medication, and his normal neurological results. *Id.* at 9–10.

Finally, Defendant contends the evidence Plaintiff submitted to the Appeals Council—that he underwent a second angioplasty after the ALJ's decision—does not warrant remand, as it does not relate to the time period at issue before the ALJ and is not material. *Id.* at 10–12.

### C. The Magistrate Judge's Report and Recommendation

Magistrate Judge Robert S. Ballou recommends denying Plaintiff's motion for summary judgment, and granting the Commissioner's motion. In his R&R, the Magistrate Judge addressed Plaintiff's contention that the ALJ erred in two regards: (1) by improperly discrediting a portion of Dr. O'Brien's opinion; and (2) by discrediting Plaintiff's testimony that he suffers from severe and disabling pain.

First, the Magistrate Judge noted that while the ALJ considered Dr. O'Brien's opinion, he gave it partial weight, finding a portion of it unsupported by the medical evidence on record. R&R 6–8. Substantial evidence supports that decision, the Magistrate Judge found, because after his angioplasty, Plaintiff showed improvement, normal neurological test results, and remained stable and without fatigue or impairments that would require the limitations Dr. O'Brien imposed. *Id.* at 8.

Second, the Magistrate Judge found there is substantial evidence supporting the ALJ's decision not to assign substantial credibility to Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments. *Id.* at 9–11. The Magistrate Judge found that Plaintiff's medical records do not provide an evidentiary basis to corroborate his allegations that his pain is so severe that he is unable to perform the range of light work of which the ALJ's RFC found him capable. *Id.* The Magistrate Judge noted that Plaintiff's treatment records reflect "a condition continuously improving after the angioplasty and stent placement," including doctors' assessments and Plaintiff's own statements at appointments. *Id.* at 10. Significantly, the Magistrate Judge emphasized Plaintiff's abuse of tobacco and alcohol during the relevant period, causing withdrawal-induced seizures, and his failure to work for thirteen years before applying for benefits. *Id.* at 10–11. The Magistrate Judge noted Plaintiff's broad allegation that medical evidence in fact "corroborated" his testimony regarding his limitations, finding Plaintiff essentially requested the court to re-weigh and re-analyze the evidence. *Id.* at 11. The Magistrate Judge emphasized it was not his role to do so, and found substantial evidence in the record to support the ALJ's credibility determinations. *Id.*

Lastly, the Magistrate Judge considered Plaintiff's evidence, submitted to the Appeals Council, that he underwent a second angioplasty and stent placement twenty days after the ALJ's

decision. The Magistrate Judge emphasized that he considered this evidence as part of the whole record before him, but found it did not require remand because it neither related to the relevant time period nor proved material. *Id.* at 11–13. The R&R emphasizes Plaintiff's steady improvement before the ALJ's decision, the lack of evidence relating the second procedures to some decline before the ALJ's decision, and the lack of additional limitations and restrictions placed on Plaintiff after the second angioplasty. Tthe Magistrate Judge found Plaintiff's new evidence unlikely to change the case's outcome and thus not warranting remand. *Id.* at 13–14.

Plaintiff timely filed Objections to the R&R on August 19, 2013, arguing the Magistrate Judge erred in finding substantial evidence to support the Commissioner's decision not to give greater weight to Dr. O'Brien's opinion. Pl.'s Objections 1–3. Plaintiff claims the ALJ did not sufficiently explain his decision to disregard portions of Dr. O'Brien's opinion and the Magistrate Judge improperly bolstered that analysis. *Id.* at 2–3. Plaintiff also contends the Magistrate Judge erred in concluding substantial evidence supports the ALJ's determination that Plaintiff's statements concerning his limitations were not fully credible and are inconsistent with the medical evidence on record. *Id.* at 3. Finally, Plaintiff objects to the Magistrate Judge's finding that the new evidence he submitted to the Appeals Council neither relates to the relevant time period, nor proves material. *Id.* at 4. Plaintiff claims the second hospitalization and angioplasty show Plaintiff's condition was not stable and improving, as the ALJ found, and substantiates Plaintiff's descriptions of continuing pain and weakness. *Id.* Thus, Plaintiff argues the new evidence is material and warrants remand to the Commissioner for consideration. *Id.*

## II. STANDARD OF REVIEW

A reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42

U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is not a large or considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 555 (1988). Rather, it comprises "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the ALJ's decision was supported by substantial evidence, a reviewing court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig*, 76 F.3d at 589 (citation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if the court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971). Ultimately, the issue before this Court is not whether Plaintiff is disabled, but whether the ALJ's determination is reinforced by substantial evidence, and whether it was reached through correct application of the law. *Craig*, 76 F.3d at 589.

Since the Plaintiff submitted additional evidence to the Appeals Council following the ALJ's decision, and the Appeals Council incorporated that evidence into the administrative record, this Court has included that evidence in its assessment of whether the Commissioner's

decision is supported by substantial evidence. *See Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

### III. DISCUSSION

#### A. ALJ's Consideration of the Treating Physician's Opinion

Plaintiff argues that the Magistrate Judge erred in finding substantial evidence to support the Commissioner's decision to give only partial weight to Dr. O'Brien's treating-physician opinion. Courts give controlling weight to the medical opinions of a treating physician, so long as they are supported by medically acceptable clinical and laboratory diagnostic techniques, and so long as they are not inconsistent with other substantial evidence in the case record. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R. § 416.927). Where a treating physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. If the ALJ does not give the treating physician's opinion controlling weight, the ALJ must provide specific reasons for the weight given to that physician's medical opinion, supported by evidence in the case record. *See* SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

I agree with the Magistrate Judge that the ALJ's decision to give Dr. O'Brien's opinion only partial weight is supported by substantial evidence, for two reasons. First, in general, the limitations it suggests conflict with other medical evidence in the record indicating Plaintiff can engage in a wider range of light work. Second, in particular, its assessment that Plaintiff would need to lie down one hour in an eight-hour workday is not linked to a medically determinable physical or mental impairment that can reasonably be expected to produce such a limitation.

The ALJ disregarded only Dr. O'Brien's limitations, in his November 2010 assessment, that Plaintiff rest one hour each workday and absent himself from work about twice a month,

9

finding these opinions "unsupported" by the medical record. R. 15. The ALJ noted Dr. O'Brien indicated a "reasonably good prognosis from PAD standpoint" for Plaintiff and found Plaintiff's "dyspnea/fatigue [to be] of unclear etiology." *Id.* (internal quotation marks omitted). Further, the ALJ found "[n]o other treating or evaluating medical source suggested limitations beyond those" in the ALJ's RFC assessment: namely, light work with no more than occasional left arm pushing/pulling and no concentrated exposure to hazards. *Id.* Finally, the ALJ specified that in forming his conclusions, he considered Dr. O'Brien's treating relationship with Plaintiff, including its length, frequency, nature, and extent; whether Dr. O'Brien's November 2010 opinions were supported by medical signs and laboratory findings and their consistency with the record as a whole; and many other factors mandated by the regulations. *Id.*

Although brief, I find the ALJ's explanation of his reasons for disregarding Dr. O'Brien's limitations sufficiently specific to make clear for this Court "the weight [the ALJ] gave to [Dr. O'Brien's] medical opinion and the reasons for that weight." *See* SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996). I also find substantial evidence in the record to support disregarding Dr. O'Brien's limitations that Plaintiff rest one hour each day and take a couple days off work each month.

Dr. O'Brien's opinion Plaintiff would need to rest one hour each workday was properly disregarded because he failed to link the symptom driving the limitation—fatigue—to a medically determinable physical or mental impairment that can reasonably be expected to produce such a limitation. Dr. O'Brien checked the reason for his rest limitation as "fatigue arising from a documented medical impairment," but on the same RFC noted that Plaintiff's fatigue was "of unclear etiology." R. 473, 476.

10

Furthermore, in that same assessment Dr. O'Brien found no marked limitation of physical activity for Plaintiff, as would be demonstrated by fatigue, palpitation, and dyspnea. Instead, the doctor indicated Plaintiff suffers only "mild – moderate limitation." R. 473. This level of limitation led Dr. O'Brien to conclude Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, would not need to alternate postures during the workday, and could sit over six hours, and stand/walk over six hours in an eight-hour workday (with over three hours each of sitting and standing/walking continuously). The doctor wrote that fatigue was a symptom of Plaintiff's PAD, but found he had a "reasonably good prognosis from PAD standpoint." R. 474. The state agency medical sources only prescribed limitations on Plaintiff's pushing/pulling with his left arm and concentrated exposure to hazards. Combined with Dr. O'Brien's other opinions and the state agency medical sources' prescribed limitations, the ALJ properly found Dr. O'Brien's suggestion the Plaintiff should rest one hour per work day in conflict with other medical evidence on the record, and thus unsupported.

For the same reasons given above, Dr. O'Brien's indication that Plaintiff would likely absent himself from work approximately twice per month due to his impairments and treatment are properly disregarded. Neither the state agency medical sources' opinions nor Dr. O'Brien's own prognosis for Plaintiff support this limitation. According to both sources, Plaintiff's condition had a reasonably good prognosis and his limitations were mild to moderate, mostly concerning his exposure to concentrated hazards and pushing/pulling with his left arm. The ALJ's decision to disregard this portion of Dr. O'Brien's opinion is supported by substantial evidence, as enumerated in the paragraph preceding this one.

## B. The ALJ's Credibility Assessment

Plaintiff also contends the Magistrate Judge erred in concluding substantial evidence supports the ALJ's determination that Plaintiff's statements concerning his limitations were not fully credible and are inconsistent with the medical evidence on record. Pl.'s Objections 3. Plaintiff alleged his impairments caused a level of pain that barred him from substantial gainful activity.

It is not the role of this Court to determine whether Plaintiff's testimony was fully credible. *Craig*, 76 F.3d at 589. Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility, and whether the ALJ's decision is supported by substantial evidence. *Id.* The ALJ determines whether a claimant is disabled by pain by a two-step process. *Id.* at 594; *see* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). First, the ALJ must find "objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities, and which could reasonably be expected to produce the pain or other symptoms alleged." *Craig*, 76 F.3d at 594 (quotations and emphasis omitted). If such evidence is found, the ALJ must then evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which [they] affect[ ] her ability to work." *Id.* at 595. Among other factors, when evaluating the claimant's credibility the ALJ should consider all evidence in the record, including "[d]iagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists." SSR96–7p, 1996 WL 374186, at *5. The ALJ's determination "must contain specific reasons" that "make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Id.* at *4.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible, to the extent that they were inconsistent with the ALJ's RFC assessment. R. 14. Plaintiff objects to the Magistrate Judge's finding that the record contains substantial evidence to support the ALJ's conclusion.

Significantly, the ALJ noted that Plaintiff's condition after his angioplasty and stent placement in February 2010 "was treated conservatively with some success." R. 15. Shortly after the angioplasty and stent placement, Plaintiff's condition improved. By April and May 2010, as the ALJ indicated, Dr. O'Brien found Plaintiff was stable with no recurrent or lifestyle limiting claudication and no evidence of tissue breakdown. R. 14. By July 2010, other than a burning in Plaintiff's right thigh that Percocet helped with, Plaintiff self-reported his right leg was "great." R. 14–15. Plaintiff reported no chest pain, shortness of breath, syncope, or edema, but did report neuropathic pain, which was treated by Neurontin. R. 15. Dr. O'Brien found complaints of left leg pain atypical for claudication and more suggestive of a neuropathic source in October 2010 and referred Plaintiff to a neurologist. *Id.* That neurologist found no focal deficit to suggest a severe myopathy. *Id.* As the ALJ found, Plaintiff's condition was treated conservatively and with some success. Medication, injections, and exercises helped to alleviate Plaintiff's symptoms, and his condition was described as improving with a reasonably good prognosis, by both Plaintiff and his physicians. R. 324, 347, 352, 357, 384, 388.

Furthermore, while Plaintiff describes his limitations as preventing him from engaging in substantial gainful activity, his behavior lends credence to the ALJ's credibility findings. Plaintiff had not worked for thirteen years prior to filing his application for benefits. R. 14.

13

Additionally, he did not attribute sufficient gravity to his doctors' treatment recommendations to quit smoking and abusing alcohol, as his doctors repeatedly admonished. Dunn experienced alcohol withdrawal-induced seizures in December 2009 but continuously reported drinking six to nine beers about six times per week after that incident and throughout his period of treatment. R. 201–13, 316, 320, 325, 331, 352, 357, 385, 389, 393, 397, 437, 441, 445, 466, 477, 488, 492.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility, and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shivley v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). In considering the record, I agree with the Magistrate Judge's finding that there is substantial evidence to support the ALJ's determination that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible, to the extent that it was inconsistent with the ALJ's RFC assessment.

### C. ADDITIONAL EVIDENCE

Plaintiff further objects to the Magistrate Judge's finding that the new evidence he submitted to the Appeals Council neither relates to the relevant time period, nor proves material. Pl.'s Objections 4. Plaintiff claims a second hospitalization and angioplasty on September 27, 2011 show Plaintiff's condition was not stable and improving, as the ALJ found, and substantiates Plaintiff's descriptions of continuing pain and weakness. *Id.*

In the Fourth Circuit, a claimant can only obtain a remand based on additional evidence submitted to the Appeals Council after the ALJ's decision if that evidence is new and material, relates to the period on or before the date of the ALJ's decision, and it is reasonably likely the new evidence would have changed the outcome of the ALJ's decision. *Wilkins v. Sec'y of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

14

The additional evidence Plaintiff provides does not relate to the period on or before the date of the ALJ's decision. Although Plaintiff describes the cause of the hospitalization as a "severe 80% lesion proximal to the stent and severe diffuse restenosis in the external iliac and common iliac stents," as the Magistrate Judge found, he does not sufficiently relate these new procedures to decline occurring before the ALJ's decision. *Id.* As described at length here, substantial evidence on the record indicates Plaintiff improved and was stable following his first angioplasty, all the way through the period of the ALJ's decision. Neither Plaintiff nor the medical records relate his emergency room visit, angioplasty, and stent placement twenty days after the ALJ's decision to his stable and improving condition before the decision.

Even if the record sufficiently made such a link, Plaintiff's new evidence does not conflict with the evidence before the ALJ and would not likely change the outcome of the Commissioner's decision. Thus, it does not warrant remand. The Appeals Council considered this evidence and found it provided no "basis for changing the Administrative Law Judge's decision." R. 2. I agree, but my analysis proceeds down a somewhat different path.

As the reviewing court, this Court is tasked with including any new evidence in its review of the entire record, and determining based on old and new evidence whether the Commissioner's decision is based on substantial evidence. *Wilkins*, 953 F.2d at 96. Yet this Court is not to resolve conflicts in the evidence or re-weigh that evidence – that is the province of the ALJ. *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Therefore, as this Court reviews this new evidence in the context of the whole record to determine whether it is material—whether it has a reasonable probability of changing the outcome of the case—it must avoid resolving conflicts in the evidence, or re-weighing it. Accordingly, this Court will ask, as have other courts in this district, whether the new evidence is contradictory, presents material

competing testimony, or calls into doubt any decision grounded in the prior medical reports. *See, e.g.*, *Bryant v. Barnhart*, No. 6:04-cv-00017, 2005 WL 1804423, at *5 (W.D. Va. Jan. 21, 2005); If the evidence does any of these things, it possesses a reasonable probability of changing the outcome of the case and the case is properly remanded to the Commissioner for reconsideration. If there are no such conflicts, I need not remand. *See Riley v. Apfel*, 88 F. Supp. 2d 572, 579–80 (W.D. Va. 2000).

Plaintiff's new evidence is not contradictory to the evidence before the ALJ, does not present material competing testimony, and does not call into doubt any decision grounded in the prior medical reports. Plaintiff obtained the second angioplasty and stent placement after he arrived at the emergency room on September 24, 2011, complaining of lower leg pain and painful, blue-colored toes. R. 564. Doctors diagnosed him with PAD and intermittent claudication then discharged him in stable condition. R. 570. After his second angioplasty and stent placement in his right common and iliac arteries on September 27, 2011, Plaintiff was able to ambulate again and no more restrictive limitations than those before the ALJ were imposed. R. 553–61.

As the Magistrate Judge pointed out in his R&R, if a social security claimant develops additional impairments or those impairments worsen after his first application for benefits, the proper recourse is to submit a new application. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008); *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005); *cf. Reichard v. Barnhart*, 285 F. Supp. 2d 728, 734 (S.D. W. Va. 2003) (finding remand for reconsideration warranted where same ALJ found claimant disabled upon second application for benefits, one week after finding claimant was not disabled on first application for benefits, considering much of the same evidence); *Goode v. Astrue*, No. 6:09-cv-00045, 2011 WL 926855, at *7–9 (Feb. 25, 2011)

(similar). Plaintiff did no such thing here. Plaintiff provides no link between the old evidence before the ALJ and the setback that caused the second angioplasty and stent replacement. Given that Plaintiff has no more restrictive limitations than those in place when the ALJ examined his case and his condition appears stable, this new evidence does not conflict with the evidence before the ALJ. It does not have a reasonable probability of changing the outcome of Plaintiff's case and does not warrant remand.

### IV. CONCLUSION

After undertaking a de novo review of those portions of the R&R to which Plaintiff objected, I find that substantial evidence supports the ALJ's conclusions. Accordingly, I will enter an Order overruling Plaintiff's Objections, adopting the Magistrate Judge's R&R in full, granting the Commissioner's Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment, and dismissing this action and striking it from the active docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

Entered this 19th day of September, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE